UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KIMBERLY WOODRING,

                              Plaintiff,

            -vs-                                          05-CV-559C

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                              Defendant.

_____

## INTRODUCTION

In an order file February 26, 2007, the court granted plaintiff's motion for judgment

on the pleadings, denied the defendant's motion for the same relief, and remanded the

matter for further proceedings (Item 14).  Defendant now moves for an order altering the

judgment pursuant to Rule 59(e) of the Fed. R. Civ. P. (Item 16).  Plaintiff has filed a

memorandum in opposition to the motion (Item 19).  For the reasons that follow, the

defendant's motion to alter the judgment is denied.

## DISCUSSION

Rule 59(e) of the Federal Rules of Civil Procedure "does not prescribe specific

grounds for granting a motion to alter or amend an otherwise final judgment," *Munafo v.*

*Metropolitan Transp. Authority*, 381 F.3d 99, 105 (2d Cir. 2004), and "district courts may

alter or amend judgment to correct a clear error of law or prevent manifest injustice." *Id.*

(internal citations and quotations omitted); *see also Wood v. F.B.I.*, 432 F.3d 78, 85 n.4 (2d

_____

[1]  Michael J. Astrue became the Commissioner of Social Security on February 12, 2007 and is
thus substituted as defendant in this case.  *See* Fed. R. Civ. P. 25(d)(1); 42 U.S.C. 405(g).

Cir. 2005) (affirming denial of Rule 59(e) motion where "district court did not commit error or a manifest injustice"). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).

In its decision of February 26, 2007, the court found that the ALJ failed to properly evaluate the opinions of plaintiff's treating physicians and failed to adequately develop the record with regard to plaintiff's residual functional capacity ("RFC"). Defendant argues that the court erred in considering Dr. Myers a treating source and in directing the ALJ to reconsider the opinion of plaintiff's treating physicians. Defendant also contends that the record contains sufficient evidence to support the ALJ's determination of plaintiff's RFC, and no additional RFC assessments from the treating physicians are required.

The Social Security Administration ("SSA") regulations provide that a treating source is a claimant's "own physician, psychologist, or other acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. The SSA will consider an acceptable medical source to be a treating source even if the claimant is only seen a few times, "if the nature and frequency of the treatment or evaluation is typical" for the claimant's condition. *Id.* The SSA will not consider an acceptable medical source a treating source if the claimant's relationship with the source is not based on the claimant's "medical need for treatment or evaluation, but solely on [the] need to obtain a report in support of [the] claim for disability." *Id.*

2

Here, Dr. Callahan, plaintiff's orthopedic surgeon, referred plaintiff to the Dent Neurologic Institute for a neurology consultation.  Plaintiff was seen by Drs. Murray and Myers at the Dent Institute in October, December, and January 2005.  This is not a case in which plaintiff was seen for a single consultation so as to obtain a report for the hearing.  Rather, the treatment relationship was based on plaintiff's medical need for evaluation and treatment.  Her treatment at Dent by Drs. Murray and Myers was fairly frequent, three times in four months, and appears to be typical for plaintiff's condition.  Additionally, this treating relationship had just begun at the time of the administrative hearing, so was necessarily of brief duration at the time of the ALJ's decision.  In his report of December 8, 2004, Dr. Murray stated that plaintiff would be following up with Dr. Myers; and in Dr. Myers' report of January 11, 2005, he recommended that plaintiff schedule a follow-up visit in two months.  Moreover, in his decision, the ALJ referred to Dr. Myers as plaintiff's "treating neurologist."  Accordingly, the court finds that it was not "clear error" to consider Dr. Myers a treating source.  Upon remand, the ALJ may certainly note the relatively brief duration of the treatment relationship in his assessment of Dr. Myers' opinion.

The Commissioner also argues that the court erred when it found that the ALJ rejected Dr. Myers opinion because it was based on the plaintiff's subjective complaints.  The court did not mean to imply that the ALJ was unaware that Dr. Myers examined the plaintiff. The court notes, as it did in its decision, that Dr. Myers examined the plaintiff, reviewed her medical records, assessed her subjective complaints, and reported his findings.  Thus, Dr. Myers' opinion was not based solely on plaintiff's subjective complaints as the ALJ found.  In any event, a doctor's reliance on a patient's subjective complaints "hardly undermines his opinion as to her functional limitations, as '[a] patient's report of

3

complaints, or history, is an essential diagnostic tool.'"  *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (*quoting Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir.1997)).

Additionally, the ALJ failed to adequately assess the opinion of Dr. Callahan, plaintiff's treating physician, in accordance with the Regulations, 20 C.F.R. § 404.1527(d)(2).[2]   Dr. Callahan performed plaintiff's carpal tunnel surgery and saw her over a period of at least three years.  In 2002, Dr. Callahan cleared plaintiff for work that did not involve keyboarding activities, repetitious use of either arm, hand, or wrist, and lifting of more than five pounds frequently.  However, Dr. Callahan noted an increase in plaintiff's symptoms in 2003 and 2004.  In October 2004, Dr. Callahan stated that plaintiff would require ongoing chronic pain and neurologic management.  Dr. Callahan also stated that plaintiff had reached a point of maximum medical improvement and had a 20 percent loss of use of each hand according to the New York State Worker's Compensation Board Medical Guidelines.  It is unclear from the decision what weight was given to the opinion of Dr. Callahan.

Finally, given the required reconsideration of the opinions of plaintiff's treating physicians, the ALJ may be required to reconsider the plaintiff's RFC.  Previously, the ALJ relied on the reports of state agency consultants and analysts who noted at the time of their RFC assessments in 2002 and 2003 that a treating physician had not quantified plaintiff's limitations.  While Dr. Callahan noted that plaintiff was unable to do keyboarding

---

[2]  The Commissioner also faults the court for referring to its discussion of the treating physicians' opinions in the decision under the heading, "The Treating Physician Rule."  As is apparent from the text of the decision, the court cited and/or quoted the applicable SSA regulations and current Second Circuit case law in its explanation of the "Rule" that requires the assessment of the weight to be given treating sources' opinions.  Additionally, in cases too numerous to cite, the Second Circuit and District Courts continue to refer to the analysis of the opinions of treating sources under the regulations as the "Treating Physician Rule."

or assembly line work, in April 2003 he assessed her ability to lift at 20 to 30 pounds maximum or 10 to 15 pounds frequently.  The medical evidence suggests that plaintiff's condition deteriorated following this assessment and, four years later, plaintiff may not have the same abilities.  Accordingly, it  It was not clear error for the court to require a RFC assessment by plaintiff's treating physician to guide the ALJ in determining plaintiff's ability to do work-related activities.

## CONCLUSION

The defendant's motion to alter or amend the judgment is denied.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN

United States District Judge

Dated: June   25        , 2007
p:\opinions\05-559.jun2207